### HOWARD v. BANK OF THE METROPOLIS.

(Supreme Court, Appellate Division, First Department. May 20, 1905.)

BANK—NEGLIGENCE—EVIDENCE—COMPETENCY AND MATERIALITY—REBUTTAL.

In an action by the payee of a note, against the bank with which he deposited it for collection, for its failure to give notice of protest to the indorser, the crucial question being whether, when plaintiff delivered the note to defendant through L., its collection clerk, he gave L. the card on which he had written the address of the indorser, evidence that an indorsement of the address on the note, following the abbreviated form thereof on the card, was in the handwriting of L., is not only competent and material, but admissible on rebuttal; it contradicting the testimony of L. that he received no information as to the address of the indorser, and that he did not have possession of the note after it was protested, the indorsement having been made after the protest.

O'Brien, J., dissenting.

Appeal from Trial Term, New York County.

Action by Robert S. Howard against the Bank of the Metropolis. From a judgment on a verdict for defendant, and from an order denying a motion for new trial, plaintiff appeals. Reversed.

See 88 N. Y. Supp. 1070.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

William B. Ellison, for appellant.
John Delahunty, for respondent.

HATCH, J. The crucial question in this case has resolved itself into an inquiry as to whether, when the plaintiff delivered the note to the bank, he delivered with it the card upon which he had written the address of the indorser upon the note. If he did, then it is quite evident that the jury would be authorized to find that the bank was negligent in failing properly to charge the indorser with liability for the payment of the note. The delivery of the card, if made at all, was to Laffey, the defendant's collection clerk, as it is undisputed that he is the person who received the note from the plaintiff. He testified that he received the note, and nothing else, that no card was delivered to him by the plaintiff at that time, and that he never saw it until the action of Howard v. Van Gieson was tried. He also testified that the note passed from his hands to the note teller, and that he never saw it again until it was brought to his window by the plaintiff, when the claim was made that it had been improperly protested. This was some time after the note had matured and the mistaken protest had been made. The plaintiff testified that, when the note was delivered to him after maturity, there

was indorsed upon the back, in pencil, the address of the indorser as given upon the card, and that such pencil indorsement was not in his (plaintiff's) handwriting. This indorsement had the same abbreviations as, and was closely similar to, the address contained upon the card. The plaintiff also testified that he applied to Laffey for the card after the delivery to him of the note; that Laffey produced it from a drawer, and delivered it to the plaintiff. This Laffey denied, and testified that there was no conversation between himself and the plaintiff respecting the indorser or his address, and that he had no information upon the subject until after the maturity of the note. The conflict of evidence between these witnesses was sharp, and the credibility of their statements was material and vital upon the issue involved. Under these circumstances, each party was entitled to every scrap of testimony which bore upon the issue or affected the credibility of the statements of either.

At the close of the defendant's case, the plaintiff called Carvalho, an expert witness in handwriting, for the purpose of showing that the indorsement on the note of the indorser's residence was in the handwriting of Laffey. Objection was made to this testimony, based upon the ground that it was not in rebuttal of the defendant's case. The court so held, and excluded the testimony; to which an exception was taken. As to who in fact wrote this indorsement, became a material issue. The defendant, upon the cross-examination of the plaintiff, had interrogated him concerning it, and claimed that it was in the handwriting of the plaintiff, and that it was placed there after the maturity of the note, and after the same had been delivered to him by the bank. This was done for the purpose of discrediting his testimony by showing that it differed from the statement made by him upon a previous trial, and also that it was not done by any one connected with the bank. The plaintiff sought to introduce the evidence of Carvalho for the purpose, among other things, of contradicting the testimony of Laffey that he knew nothing concerning the indorsement upon the card, and also contradicting his testimony that he had not seen the note after it passed from his hands to the note teller of the bank. There can be no question but that testimony showing that Laffey wrote the indorsement upon the note before its delivery to the plaintiff was competent and material. It bore directly upon the issue as to whether he had the card in his possession, as claimed by the plaintiff, or had received information from him as to the address of the indorser. The writing upon the card being in abbreviated form, and the indorsement upon the note following closely that of the card, and exactly so as to the abbreviations, had such indorsement been shown to be in the handwriting of Laffey, it would have authorized the inference that at the time when he made the indorsement upon the note he either had before him the card which contained it, or was possessed of information concerning it. He could only have become, according to his testimony, possessed of such information either by the possession of the card, or by information given to him by the plaintiff at the time of the delivery of the note to the bank for collection.

It is said, however, that the plaintiff was bound to make proof of such facts as a part of his affirmative case, and that, having failed so to do, it was not available by way of rebuttal. If this claim be true, there was no error in the ruling, as it would be discretionary with the court to permit the evidence or deny it, and no error could be predicated of the ruling, even though the testimony was inherently competent and material. But where the evidence offered tends directly to weaken, contradict, or impeach the statement of a witness upon a material question, it is competent by way of rebuttal, and it is error to exclude it. Bancroft v. Sheehan, 21 Hun, 551; Odell v. McGrath, 21 App. Div. 252, 47 N. Y. Supp. 601; Law of Witnesses, Rapalje, §§ 196, 255. The evidence offered was strictly in rebuttal of the statements of Laffey. It contradicted his statement that he had not been in possession of the note after its delivery to the note teller, as it was conceded that the indorsement was not upon the note when it left the hands of the notary after protest, and, if placed thereon by Laffey, it could only have been so placed between the time of such delivery and its delivery to the plaintiff. The latter, as a part of his affirmative case, was not required to show that Laffey had admitted having possession of the card, or of information concerning the residence of the indorser. The evidence offered was in the nature of an admission upon the part of Laffey that from some source he had information concerning the residence of the indorser prior to the time of the maturity of the note, as his indorsement upon it disclosed the possession of such information, and he acquired no information save from the plaintiff. Consequently, its tendency and the inference to be drawn from such facts directly contradicted his statement that he had no knowledge upon the subject. This testimony, therefore, was not only competent and material, but also competent in rebuttal of the defendant's case; for which reason the ruling was error.

The judgment and order should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except O'BRIEN, J., who dissents.

O'BRIEN, J. This action is brought to recover the damages sustained by the plaintiff, as payee of a promissory note, by reason of the alleged negligence of the defendant in failing to give proper and timely notice of protest to the indorser thereon.

The note was made by one Starbird to the order of the plaintiff, was indorsed by Ira Van Gieson, and deposited by the plaintiff with the defendant bank for collection. When it fell due, it was presented for payment and dishonored. The notary clerk in the bank thereupon prepared notices of protest, one to the plaintiff, which was mailed to him at his proper address, and one which was intended for the indorser. The indorsement upon the note not being clearly written, the notary clerk made a mistake in the name, and, instead of reading it Ira Van Gieson, he concluded that it was "Waran Gilson," and, as the address of such a person could not be found, the notice to the indorser was inclosed with the one sent to the plaintiff, together with the statement: "Please forward the

inclosed notice at once." This notice was never received by Van Gieson, and, as appears from a stipulation in the case, the attempt by the plaintiff to collect the amount of the note from him was unsuccessful (Howard v. Van Gieson, 46 App. Div. 77, 61 N. Y. Supp. 349; Howard v. Van Gieson, 56 App. Div. 217, 67 N. Y. Supp. 620), for the reason that the indorser was relieved from liability through the failure to give him proper notice of protest.

Upon this trial it was made to appear that the maker of the note was financially irresponsible, and the plaintiff contends that the defendant is liable for the damages caused by the release of the indorser through its alleged negligence in mistaking the name and not giving the proper notice of protest. That Van Gieson's name as it appeared upon the note was so illegible as to be easily mistaken was conceded, and practically no claim was made at the trial that the notary clerk was negligent in misreading it. But the plaintiff alleges that at the time he left the note with the defendant for collection he called attention to the fact that he believed the maker was financially irresponsible, and handed to the person in the bank who received the note from him a card, bearing upon it, clearly written, the name and address of the indorser.

If the bank, having the true name and address in its possession at the time the note was protested, nevertheless made the error which it is conceded was made, then the jury would have been justified in finding that, under such circumstances, it was negligent in not mailing the notice of protest to the address of the indorser as given upon the card. Whether or not the card was presented as claimed, was the sharply contested issue at the trial.

Upon the subject the plaintiff testified that, at the time he received the note, the maker, Starbird, gave him a card upon which he had written the name of the indorser, "Dr. Ira Van Gieson," and his address, "No. 1 Madison Ave., City," and that the plaintiff thereupon wrote upon the card, in pencil, the words, "Director Path. Institute State of N. Y.;" that at the time he took the note to the bank, shortly after January 5, 1898, he handed to the note teller the note itself, the card referred to, and certain stock which was to be held as collateral; that at the same time he asked the teller to be careful in protesting the note, as he did not consider the maker good, and expected to hold the indorser, for which reason he gave the bank the card, so that it might know the name and address of the endorser. He testified, further, that he told the teller that he expected to be away from the city when the note fell due, and that shortly after depositing the note at the bank he did leave the city, and was absent therefrom almost continuously until April 18th; that upon his return he discovered that the note had been dishonored, went to the bank, and received, upon request, an envelope containing the stock, the note, and the certificate of protest thereof; that upon subsequently examining the contents of the envelope he found that the card was missing, and upon the next day returned to the bank and asked for it; that the card was then found and handed to him; that his dealings at the time of getting the note back were with the same person who had originally received it from

him; that thereafter he had a conversation with the defendant's cashier, Evans, in which he called his attention to the situation, and informed him that he would hold the bank responsible for its failure to properly protect the note.

The notary clerk, Power, who protested the note, was called for the plaintiff, and testified that he had received no stock or card with the note, and that at the time it was protested there was not upon the note any address of the indorser, and that he could not ascertain that address from any one in the bank. This is substantially all the evidence offered by the plaintiff, and as to the crucial facts in the case he is therefore practically uncorroborated.

For the defendant, the witness Laffey was called, and testified that he was the person who received the note from the plaintiff, and he contradicts the plaintiff absolutely as to receiving the card or stock at that or any other time. He stated that when the note was handed to him by the plaintiff, nothing at all accompanied it, and there was no conversation with reference to the fact that the plaintiff was going out of the city and wanted the bank to be careful that the note was properly protested, as he did not believe the maker to be good. He testified also that, after the note had been dishonored, the plaintiff got it from him, and neither at that time nor at any subsequent time did he ask for a card, and that neither he (the witness) nor anybody else, in his presence, ever returned the card to the plaintiff.

The receiving teller of the bank, Searle, testified that when the note came into his hands there was no stock with it, and no card attached to it in any way; and the cashier, Evans, testified that at no time subsequent to the dishonoring of the note did he, according to his recollection, have any conversation with the plaintiff.

It will thus be seen that the plaintiff was contradicted upon nearly every material point by witnesses called for the defendant; and upon this conflicting evidence a question of fact was presented which was properly submitted to the jury, and their finding in favor of the defendant is certainly not against the weight of evidence. Not only is the plaintiff's testimony contradicted by the defendant's witnesses, but his own statements on this trial differ in certain material particulars from those made by him upon the trial of his former action against Van Gieson; and these circumstances, together with the fact that he is an interested party and practically uncorroborated, show that the verdict in favor of the defendant was, to say the least, not an improper one. The judgment appealed from must therefore be affirmed, unless there was some reversible error committed at the trial.

Many rulings of the trial court were brought to our attention by the appellant, and we have examined them all with care, but have discovered no errors which require a reversal, and we do not deem it necessary to specifically consider any of the rulings except one. Upon the back of the note as it was introduced in evidence, and under the name of the indorser, appeared in lead pencil the words, "1 Madison Ave., Path. Institute of State N. Y." It is conceded that this pencil indorsement was not upon the note when it was left

at the bank, nor when it came into the hands of the notary and was protested by him. The plaintiff now testifies that it was upon the note, however, when he got it back from the bank, although upon a former trial he had testified that those words were in his own handwriting, and consequently could not have been there until after the note had come again into his possession. In order to explain this discrepancy, he now testifies that on account of being nearsighted he was mistaken as to the handwriting when he gave his former testimony, but that upon a further examination of the pencil indorsement he is satisfied that it was not written by him. No further evidence was offered upon the subject of the handwriting of the pencil indorsement upon the note before the plaintiff closed his case. After the defense had put in all of its evidence, however, an expert in handwriting, Carvalho, was called, was shown the pencil indorsement upon the note, also the similar words written in pencil upon the card, and concededly in the handwriting of the plaintiff, and also two letters concededly in the handwriting of Laffey. With these instruments before him, the witness, who had been duly qualified, was asked to state whether in his opinion the pencil memorandum upon the note was in the same handwriting as the pencil memorandum upon the card, to wit, the plaintiff's, or in the same handwriting as the letters, to wit, Laffey's. This question was objected to as incompetent and improper, that no foundation had been laid for it, that it was speculative, and not rebuttal evidence. The objection was sustained, and the plaintiff excepted. We do not think the ruling of the trial court presents a reversible error. No rule for the conduct of trials is more familiar than that the party holding the affirmative is bound to introduce all the evidence on his side before he closes. He must exhaust all his testimony in support of the issue on his side before testimony on the opposite side is heard. He can afterwards introduce evidence in rebuttal only, and rebutting evidence in such cases means not merely evidence which contradicts the witnesses on the opposite side and corroborates those of the party who began, but evidence in denial of some affirmative fact which the answering party has endeavored to prove. Marshall v. Davies, 78 N. Y. 414. The rule has been correctly stated by Mr. Justice McLaughlin in Barson v. Mulligan, 77 App. Div. 192, 79 N. Y. Supp. 31, where it is said:

"Upon a trial a party is bound to produce all his evidence before he closes his side of the case, and, after he has closed his case and rested, it is within the discretion of the court whether or not to allow a reopening of the case to supply omissions or to receive further testimony, but such discretion shall be sparingly exercised."

Agate v. Morrison, 84 N. Y. 672; Young v. Johnson, 123 N. Y. 226, 25 N. E. 363.

It is the theory of the plaintiff that, if he could show that the pencil indorsement upon the note was in the handwriting of Laffey, the inference would follow that Laffey had before him the disputed card, which would corroborate the claim that the card had been left with the bank. But if the plaintiff desired to prove this, he should have done so upon his original case. The witness Laffey, when

upon the stand, was not asked whether or not he had made the pencil indorsement upon the note; so the testimony offered was not in direct contradiction of any statement made by him, and it was not a denial of any affirmative fact which the defendant had endeavored to prove. Therefore it was not rebuttal evidence, the trial court could in its discretion exclude it, and we do not think that the ruling was any abuse of this discretion.

It is extremely doubtful whether the testimony would have been admissible at any stage of the case. Its only materiality is in creating an inference that the card was in the possession of the bank. But assuming that the witness would have testified that the pencil indorsement upon the note was in the handwriting of Laffey, which is the view most favorable to the plaintiff, it does not follow that Laffey had the card in his possession when he made that indorsement. It is true he testified that the note was not in his possession from the time it matured "until Mr. Howard brought it to my window, making this claim that it had been improperly protested." But assuming that Laffey did make the indorsement, he might have made it at the time last mentioned; at any rate, as already stated, it was conceded that the memorandum was not upon the note at the time of the protest; and, that being so, it must have been put there after that time, and Laffey might have received the information necessary to make the memorandum from many sources other than the card. The inference that he got it from the card is therefore too speculative, problematical, uncertain, and remote to render the evidence competent or of probative force. For this reason, it was inadmissible and properly excluded.

I think, therefore, that the judgment and order appealed from are right, and should be affirmed, with costs.

